Allen, J.
 

 At the hearing before the commission, it was testified by F. J. Mayo that at that time he was using an 18-passenger car, although his then certificate authorized the use only of a 12-passenger car. It was admitted by Mayo that he had paid $90 tax for the year 1927 for this 18-passenger motor vehicle, this being the tax required under Section 614-94, General Code, for a 12-passenger car, and a greater tax, namely, $140, being required for an 18-passenger car. It was also admitted by Mayo that the schedule under which he was at this time operating was not the same schedule which had been approved by the commission, and that he had abandoned operation upon a portion of the route for some five months. While it was shown' that Mayo had applied to abandon that part of the route, the clerk of the Public Utilities Commission testified that no hearing had been held or action taken upon his application for abandonment, and Mayo conceded that he had ceased operation over this portion of the route without being authorized by the commission to abandon the same.
 

 The attorney for the Public Utilities Commission admits the abandonment without authorization, but seems to argue that since no public complaint was made, no public interest was affected by the abandonment. Counsel for the commission also admitted the change of the time schedule without authorization, and contended that both of these unauthorized acts, and in fact the other
 
 *315
 
 unauthorized acts admitted by Mayo, constituted mere irregularities not ground in themselves for revocation of the certificate.
 

 While Mayo admitted his use of an 18-passenger car, he claimed that he “only hauled 12 passengers,” and denied that he at any time hauled more than 12 passengers, stating that he uses the “rear compartment” for mail and baggage. Evidence was adduced at the hearing strongly counteracting this excuse of Mayo and tending to establish that the 18-passenger car contains five seats and that the rear seat of the bus has not been removed permanently since its operation, unless subsequent to the filing of the complaint.
 

 One Ralph Mills stated that the 18-passenger bus contained five seats, and that he had seen the rear seat occupied during the period covered by the complaint. A certain W. F. Petersein, inspector for the Public Utilities Commission, said that he had seen passengers in all of the seats of the 18-passenger car; that he had seen it with more than 12 passengers; and that he had never seen the rear seat taken out of the bus. These facts strongly affect the credibility of Mayo and show his explanation as to the rear seat to be a mere subterfuge. Certainly the weight of the testimony, particularly in view of the fact that a great part of it consists of the admissions of Mayo himself, strongly supports the contentions of the plaintiff in error.
 

 It has been heretofore held by this court, in the case of
 
 Scioto Valley Railway & Power Co.
 
 v.
 
 Public Utilities Commission, ante,
 
 64, 157 N. E., 475, in effect, that the use of a bus of larger capacity than that authorized, irrespective of the
 
 *316
 
 number of seats in the bus, constitutes an unauthorized operation. Facts similar to those which constituted the occasion of the decision of the
 
 Scioto Valley case
 
 are present here, and are stronger on behalf of the plaintiff in error; for it is established by the testimony of several witnesses that as a matter of fact the removal of the fifth seat, if made at all, has been temporary only. Here is a situation in which the certificate holder himself admits the operation of equipment which he was not authorized to operate, his failure to pay into the treasury of the state of Ohio the tax due upon an 18-passenger bus, his failure to operate over a portion of his certificated route, and the use of a time schedule not on file with the Public Utilities Commission. While the Public Utilities Commission, under Section 614-87, General Code, is vested with a certain discretion in deciding whether or not good ground for revocation of a certificate exists, in view of the statutory provisions as to regulation of motor bus operation any one of the above acts admitted by Mayo establishes violation of an essential requirement for bus operation. The combination of all of these circumstances surely does constitute good ground for revocation of the certificate. Such being the case it is unnecessary to pass upon the other assignments of error.
 

 Order of the Public Utilities Commission reversed.
 

 Order reversed.
 

 Marshall, C. J., Day, Kinkade, Robinson and Matthias, JJ., concur.
 

 Jones, J., not participating.