*321
 
 At,t/en, J.
 

 Did the Public Utilities Commission act unlawfully and unreasonably in revoking the certificate1? Section 614-87, General Code, provides that:
 

 “The commission may at any time for a good cause * * * revoke, alter or amend any certificate issued under the provisions of this chapter.”
 

 It has been previously held by this court that failure to comply with certain statutory provisions relative to motor transportation companies constitutes “a good cause” for revocation of the certificate.
 
 Miami Valley Transit Co.
 
 v.
 
 Public Utilities Commission, 117 Ohio
 
 St., 311, 158
 
 N.
 
 E., 591;
 
 Minerva-Ganton Transit Co.
 
 v.
 
 Public Utilities Commission,
 
 118 Ohio St., 561, 162 N. E., 34.
 

 In this ease the commission revoked the certificate upon one ground, namely, the failure of the company to operate, and recites in its order that, while the record of the commission discloses that one member of the commission, in an informal and indefinite manner, attempted to indicate that the company had been relieved from the operation of the service, such authorization was void and of no effect. The
 
 Miami Valley case, supra,
 
 specifically held that the abandonment of operation over a portion of a certificated route, without the approval of the Public Utilities Commission, together with other violations of statute, constituted good cause for revocation of the certificate.
 

 Section 614-92, General Code, provides that:
 

 “It shall be unlawful for any motor transportation company * * # to fail or refuse to operate on the whole of the route, in the manner and at the time specified in the certificate; except in case of
 
 *322
 
 emergency due to the act of God or unavoidable accident or casualty or the route becoming impassable, # # * ??
 

 Does a failure to operate, under the circumstances disclosed herein, constitute a violation of the statute? This record is replete with testimony that on a large portion of the route in question, namely, on at least that portion between Chandlersville and Cumberland, and, from certain testimony, on the entire portion from Chandlersville to Woodsfield, the roads were impassable for a truck with a load during the entire period. It was testified, in substance, that it would be impossible to make regular schedule time on this route; that, while a passenger car might at some time get through, a truck would not be able, carrying freight, to make the trip, and that the clay roads in that vicinity, over some of which this route runs, are practically impassable from November to May. No testimony to the contrary was adduced.
 

 With reference to the rest of the route, the record shows that the president of the company, Mr. Culhan, and the secretary, Mr. Miller, came to the office of the commission and discussed the question with the commission both before and after the filing of the complaint herein, and offered to carry out the freight schedule over all of that passable part of the road over which the company is operating passenger service. The testimony of Culhan was that
 
 “we
 
 come before the commission several times; I can’t just exactly specify the exact times but we come three or four times ’ ’ before the complaint was filed, and after the complaint was filed too. Culhan stated that the commission did not grant the privi
 
 *323
 
 lege to put on the trucks over the passable parts of the route.
 

 A letter was also received in evidence, which reads as follows:
 

 “Columbus, Ohio, December 20, 1926.
 

 “To the Honorable Public Utilities Commission of Ohio.
 

 “Gentlemen: This is to advise you that on account of road construction upon the Zanesville, Caldwell and Woodsfield road it will be impossible to put our trucks for freight service upon said road for a few weeks, but assure the Commission that we will operate under Certificate No. 2596 as soon as tlie same can safely be done. Requesting the approval of the Commission, I am, The Z. C. & W. Transportation Co., by J. A. White— [Sgd.] Attorney.
 

 “1-18-1927 Approved Marshall, Ch.”
 

 This is the letter to which the commission referred in its order, stating that it was an authorization only by one member of the commission. However, this letter, when read together with the entire testimony, indicates that conferences were had by the company and its predecessors, not With one member of the .commission merely, but with the commission as a body. Mr. Culhan’s testimony with regard to the conference is in no way disputed, and the notation on the letter, “Approved Marshall, Ch.,” surely gives rise to the inference that Commissioner Marshall was authorized by the commission to approve the application, and that he made the notation in his official capacity as chairman simply as a record of the action of the body.
 

 Cessation of operation cannot be ignored when deliberately done without lawful justification; but
 
 *324
 
 failure to operate when roads are actually and concededly impassable, and when the situation is explained to the commission and applications are made to operate over the only passable part of the road, cannot be regarded as a violation of the statute, nor, hence, as “good cause” for revocation of the certificate.
 

 Under the facts of this particular record, we are compelled to reverse the order of the Public Utilities Commission.
 

 Order reversed.
 

 Marshall, C. J., Day, Kinkade,'Robinson, Jones and Matthias, JJ., concur.