By the Court.
 

 This matter came on for hearing before the Public Utilities Commission of Ohio on a citation to Lattavo Brothers, Inc., to show cause why its certificate of public convenience and necessity No. 1564-1 should not be suspended, cancelled or revoked.
 

 .Certificate No. 1564-1 authorized‘Lattavo Brothers, Inc., to operate a motor transportation company under the laws of Ohio and to transport property in intrastate commerce on call of the public over irregular routes from and to Canton, Ohio.
 

 
 *337
 
 The evidence adduced before the commission showed the following state of facts
 

 On the streets of Canton, sometime prior to June 10, 1944, Ormond Lattavo, president and general manager of Lattavo Brothers, Inc., had met John F. Cianflona, who was an attorney examiner for the commission from sometime in 1939 until sometime in April 1945, and Cianflona had asked him whether he had bought his tax cards. Ormond Lattavo replied that he had ordered them. It does not appear, however, that anything was said by either of them about procurement of tax cards by Cianflona.
 

 On June 10, 1944, Cianflona went into the office of the tax department, when no one was there except the janitor, and took some tax cards. These he put through the office machines, which authenticated them by stamping thereon the facsimile signature of Irvan A. Gorrill, Superintendent of Motor Transportation, the date, June 10, 1944, the numbers and the words, “tax paid.” Otherwise the cards were not filled out. Cianflona sent three of these cards, which were numbered 18622,18648 and 18649, respectively, to the office of Lattavo Brothers, Inc., in Canton, Ohio. The rest of the cards are not involved in the instant case. Those he gave to one Charles M. Burnside who had no connection with Lattavo Brothers, Inc. Cianflona received no reward or compensation for what he did, but when pressed for a reason for giving the three cards to Lattavo Brothers, Inc., said it was “just a friendly gesture.”
 

 About thirty days prior to the tax year, which begins on the first day of July each year, tax cards in blank are mailed to the various motor carriers. Each of these cards has a top and a bottom section. Each motor carrier fills out its cards and sends them back to the commission with a check to cover the total amount of taxes. The commission then marks the cards “tax
 
 *338
 
 paid,” dates, numbers and authenticates them by adding the facsimile signature of the superintendent of motor transportation. Thereupon the top parts are mailed to the respective operators and the bottom parts are retained for the commission’s files.
 

 Lattavo Brothers, Inc., operated a number of tractors and trailers under certificates Nos. 7103-RX (interstate) and 1564-1 (intrastate) and, having received its blank tax cards from the commission in June 1944, enclosed a check for $384, dated the 13th of that month, together with 14 of the tax cards properly filled out, which were intended for use on its tractors and trailers. The filling out of the cards was done, and the remittance of taxes made, by Eugene Scott, office manager and bookkeeper, under the direction of Ormond Lattavo. A few days subsequently the tax cards were received and bore numbers 4181 to 4194, inclusive.
 

 Shortly afterward, Lattavo Brothers, Inc., received an envelope, which- had no return address on it, was postmarked Columbus and contained the three tax cards in question. These bore the numbers, 18622, 18648 and 18649, respectively. ■ This envelope was opened by Eugene Scott, office manager and bookkeeper. He took the cards to Alfred'Lattavo, secretary and dispatcher of the corporation, and asked him what to do with them. Alfred Lattavo replied that it was an oversight on the part of the commission or something, but that he, Scott, should go ahead and make them up.
 

 Scott then, acting under the direction of Alfred Lattavo, filled in the blank places on each card and after the words, “Ohio Certificate No.,” he put “1564-1.” -Thereupon without remitting any additional amount to or communicating with the commission, Lattavo Brothers, Inc., put the three cards into use on vehicles operating under certificate No. 1564-1.
 

 Ormond Lattavo testified that he did not know of the receipt of the three cards until some inspectors
 
 *339
 
 came to the place of business of Lattavo Brothers, Inc., to make an inspection. The inspectors found the three tax cards in use' on a tractor and double-bottom trailer that had recently returned from a trip and took them away for purposes of investigation.
 

 Lattavo Brothers, Inc., being a corporation, could act only by agent. Agents of the corporation received and put in use the three cards when they knew they had not been paid for, and had not been issued in the regular way. As stated, Scott had been instructed and directed by Ormond Lattavo, the president and general manager, in the method of applying for cards, and •Scott made application for them (other than the three) in the manner directed. The latter must have known that the three cards in question were not included among those applied for and received from the commission. Moreover, more tractors and trailers were operated than there were tax cards, even including the three improperly issued. These irregularities, with respect to the use of cards, covered a considerable period of time and could hardly have escaped the attention of the president and general manager.
 

 The commission found that Lattavo Brothers, Inc., operated motor vehicles for hire in intrastate commerce under certificate No. 1564-1 (a) upon tax cards illegally and fraudulently obtained from the commission, with intent to defraud the state of Ohio, (b) without paying the $42 for the three tax receipt cards unlawfully used and (c) without paying to the treasurer of the state of Ohio the taxes due and payable under Section 614-94, General Code, on tractors and trailers operated without tax cards. For such conduct the commission revoked and cancelled certificate No. 1564-1 and ordered the payment of $42 to the treasurer of the state of Ohio.
 

 The action of the commission was justified by the holdings of this court in the following cases:
 

 
 *340
 

 Scioto Valley Ry. & Power Co.
 
 v.
 
 Public Utilities Commission,
 
 117 Ohio St., 64, 157 N. E., 475;
 
 Miami Valley Transit Co.
 
 v.
 
 Public Utilities Commission,
 
 117 Ohio St., 311, 158 N. E., 591;
 
 Minerva-Canton Transit Co.
 
 v.
 
 Public Utilities Commission,
 
 118 Ohio St., 561, 162 N. E., 34;
 
 Columbus & Zanesville Transportation Co.
 
 v.
 
 Public Utilities Commission,
 
 118 Ohio St., 43, 160 N. E., 458;
 
 Z. C. & W. Transportation Co.
 
 v.
 
 Public Utilities Commission,
 
 119 Ohio St., 318, 164 N. E., 230;
 
 Detroit-Cincinnati Coach Line, Inc.,
 
 v.
 
 Public Utilities Commission,
 
 119 Ohio St., 324, 164 N. E., 356;
 
 Oyster et al., d. b. a. Sebring-Alliance Bus Line,
 
 v.
 
 Public Utilities Commission,
 
 120 Ohio St., 510, 166 N. E., 578;
 
 Midwestern Motor Transit, Inc.,
 
 v.
 
 Public Utilities Commission,
 
 126 Ohio St., 317, 185 N. E., 194;
 
 Blue Motor Transportation Co.
 
 v.
 
 Public Utilities Commission,
 
 131 Ohio St., 66,1 N. E. (2d), 613.
 

 For the reasons given, the order of the Public Utilities Commission is affirmed.
 

 Order affirmed.
 

 Weygandt, C. J., Zimmerman, Bell, Williams Turner, Matthias and Hart, JJ., concur.